IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| KATHLEEN L.[1], | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 7:21-CV-513 |
| | ) | |
| KILOLO KIJAKAZI, Acting | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Plaintiff Kathleen L. ("Kathleen") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") finding her not disabled and therefore ineligible for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB") under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433; 42 U.S.C. § 1381-1383f. Kathleen alleges that the Administrative Law Judge ("ALJ") erred by: (1) failing to properly accommodate her severe mental impairments in the residual functional capacity ("RFC"); and (2) failing to properly assess her subjective allegations. Kathleen also asks the court to remand this case for consideration of additional evidence.  I conclude that substantial evidence supports the Commissioner's decision in all respects, and the additional evidence does not warrant remand. Accordingly, I **RECOMMEND GRANTING** the Commissioner's Motion for Summary Judgment (Dkt. 19) and **DENYING** Kathleen's Motion for Summary Judgment (Dkt. 13).

## STANDARD OF REVIEW

This court limits its review to a determination of whether substantial evidence supports

---

[1] Due to privacy concerns, I use only the first name and last initial of the claimant in social security opinions.

the Commissioner's conclusion that Kathleen failed to demonstrate that she was disabled under the Act.[2] <u>Mastro v. Apfel</u>, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." <u>Craig v. Chater</u>, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations and alterations omitted); <u>see also</u> <u>Biestek v. Berryhill</u>, 139 S. Ct. 1148, 1154 (2019) (emphasizing that the standard for substantial evidence "is not high"). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." <u>Mastro</u>, 270 F.3d at 176 (quoting <u>Craig v. Chater</u>, 76 F.3d at 589). Nevertheless, the court "must not abdicate [its] traditional functions," and it "cannot escape [its] duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." <u>Oppenheim v. Finch</u>, 495 F.2d 396, 397 (4th Cir. 1974). "The inquiry, as is usually true in determining the substantiality of evidence, is case-by-case." <u>Biestek</u>, 139 S. Ct. 1148. The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. <u>Hays v. Sullivan</u>, 907 F.2d 1453, 1456 (4th Cir. 1990).

---

[2] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. <u>See</u> 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

## CLAIM HISTORY

Kathleen filed for SSI and DIB benefits in November 2018, claiming that her disability began on September 20, 2018. R. 77.[3] The state agency denied Kathleen's claims at the initial and reconsideration levels of administrative review. R. 138–73. ALJ Joseph Scruton held a hearing on March 11, 2021, to consider Kathleen's claims, which included testimony from vocational expert Asheley Wells. R. 109–37.  Kathleen was represented by counsel at the hearing. On April 30, 2021, the ALJ entered his decision considering Kathleen's claims under the familiar five-step process[4] and denying her claims for benefits. R. 77–92.

The ALJ found that Kathleen suffered from the severe impairments of adjustment disorder, major depressive disorder, generalized anxiety disorder, post-traumatic stress disorder, and gastroesophageal reflux disease ("GERD"). R. 79. The ALJ determined that these impairments, either individually or in combination, did not meet or medically equal a listed impairment. R. 80–83. The ALJ concluded that Kathleen retained the residual functional capacity ("RFC") to perform light work, except that she needs to avoid dangerous hazards like working around moving machinery parts or at unprotected heights. R. 83.  The ALJ imposed the following non-exertional restrictions: Kathleen can concentrate, persist, and maintain pace

---

[3] Kathleen's date last insured was December 31, 2023; thus, she must show that her disability began on or before this date and existed for twelve continuous months to receive disability insurance benefits. R. 36; U.S.C. §§ 423(a)(1)(A), (c)(1)(B), (d)(1)(A); 20 C.F.R. §§ 404.101(a), 404.131(a).

[4] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R.§ 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. At the fifth step, the burden shifts to the Commissioner to establish that the claimant maintains the RFC, considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies.  42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

adequate to perform simple, routine, non-complex tasks in a work environment presenting
routine work situations and routine work changes, which involves no tandem tasks, and has no
fast-paced production requirements; there can be no requirement for direct contact with crowds
or public interaction; Kathleen is able to interact with coworkers and supervisors in brief,
superficial encounters, predominantly lasting one to three minutes each; Kathleen may incur up
to 10% off task performance apart from regular employer-scheduled breaks; and may be absent
from work up to one day per month. Id.

The ALJ determined that Kathleen was unable to perform her past relevant work as a
medical records clerk, medical clinic phone operator, and stocker, but that she could perform
other work that exists in the national economy such as laundry worker, price marker, and office
helper. R. 91. Thus, the ALJ concluded that Kathleen was not disabled. Id. Kathleen appealed
the ALJ's decision and submitted additional records to the Appeals Council for consideration.
The Appeals Council denied her request for review on September 9, 2021. R. 1–6.

## ANALYSIS

### I.     Medical History and ALJ Decision

#### a.  Mental Impairments

Kathleen has a history of anxiety and depression that significantly worsened following
the sudden death of her 16-year-old son in March 2017. R. 539. Kathleen sought mental health
treatment for her grief, emotional pain, depression and panic attacks from March 2017 through
her alleged disability onset date of September 20, 2018. During this time, Kathleen's doses of
Lexapro and Klonopin were increased and she was referred to grief counseling. R. 349, 359,
538. On February 12, 2018, Kathleen's Klonopin dose was decreased. R. 356.

In May 2018, Kathleen established a new provider relationship with New Horizons Healthcare, and reported chronic anxiety and depression. R. 393. Her anxiety was triggered by crowds of people or feeling upset. Kathleen was working at Kroger as a stocker and was not around a lot of people.  Kathleen reported feeling stable on her current medication regimen and was interested in counseling. Kathleen reported that her GERD was well-controlled with Prilosec. Id.  Upon examination, Kathleen was oriented in all spheres, her attention and memory were intact, her stream of thought process was linear and her affect tearful. R. 394.  Afsanah Widner, PA, referred Kathleen to a psychiatrist for counseling and prescribed ranitidine for her GERD. Id.

Kathleen followed upon on June 6, 2018, and reported that her anxiety was constant throughout the day but much worse in public settings. R. 407.  Kathleen reported experiencing chest tightness, shortness of breath and diarrhea daily.  She lost 40 pounds over the last 6 months, and reported sadness, fatigue, lack of motivation and anhedonia. She had difficulty sleeping. Id. Kathleen was well-appearing with good eye contact, good hygiene, alert and oriented, intact insight, judgment and cognition, and a sad, tearful affect. R. 408.  Jessica Gillispie, PAC, replaced Kathleen's Klonopin with Xanax, and continued her Lexapro dose. Id.

On June 28, 2018, Kathleen reported that her anxiety was not under control, and she had diarrhea when she eats, worse with anxiety. R. 396.  Ayesha Nazli, M.D., prescribed dicyclomine for Kathleen's chronic diarrhea. R. 398.

Kathleen began counseling with Alison Allsbrook, LCSW, on June 29, 2018. R. 410. Kathleen was working the night shift stocking shelves at Kroger, and said it helped to have a job where she can work alone and not deal with people asking questions. She reported always having anxiety and depression, but her symptoms went "through the roof" after her son's death. Id.

5

On July 2, 2018, Kathleen reported that Xanax was not helping her anxiety and it was better controlled with Klonopin. Kathleen stated that her depression was fairly stable. R. 412. Jessica Gillispie, PAC, restarted Kathleen on Klonopin. R. 413.

In September 2018, Kathleen reported that she decided to stop working due to her overwhelming anxiety and stomach issues. R. 424.

In October 2018, Kathleen visited Jessica Gillispie and reported that her anxiety and depression were situational but improved with medications, and she was sleeping well. R. 426. On examination, Kathleen's mental status was alert and oriented, her insight, judgment and cognition were intact, and her mood and affect were tearful. R. 427.

Kathleen followed up with Ms. Gillispie in January 2019 (R. 445), April 2019 (R. 456), and July 2019 (R. 469), and her mental status remained largely unchanged. She reported having her house remodeled, having a "few meltdowns," an increased appetite and continued gastrointestinal issues. R. 445. Kathleen's depression increased around her son's birthday, and she took Melatonin to help her sleep. R. 469.

In August 2019, Kathleen reported daily sadness, crying, fatigue, lack of motivation and anhedonia; decreased appetite; and difficulty sleeping. R. 521. Kathleen stated that her anxiety was fairly well controlled with Klonopin but continued to be situational. Id. Kathleen's mental status exam was normal aside from a sad, tearful affect. Ms. Gillispie continued Kathleen's medications. R. 523. Kathleen followed up with Ms. Gillispie in September 2019 (R. 514) and November 2019 (R. 507), and her mental health examinations reflected sad mood and affect.

Kathleen continued regular psychotherapy appointments with Alison Allsbrook, LCSW, twice a month from October 2018 through February 2021. In April 2020, Kathleen reported that her anxiety has been "through the roof," and her stomach has been upset. R. 561. She reported

6

eating normally because she knows she can go to the bathroom when necessary.  She stated that nothing takes away her constant feelings of anxiety and stress, and remembered the "horror" of trying to work at Kroger and dealing with anxiety, panic, stomach cramps and diarrhea. She reported wanting very much to return to work but knowing there is "no way that can happen." Id.

In May 2020, Kathleen followed up with Johna Jenkins, MHNP, and reported that the COVID-19 state of emergency increased her stressors and anxiety, she had increased depression with Mother's Day, and her appetite was slightly decreased. R. 570. Her mental status exam was normal aside from anxious mood. R. 571.

Kathleen continued to report increased anxiety due to COVID-19, increased diarrhea, and dreading the month that her son died. R. 551, 553–60, 563, 566. In February 2021, Kathleen reported to Ms. Allsbrook that her anxiety was overwhelming and often made it impossible to do what she wants and needs to do. R. 590.  In March 2021, Pamela O'Dell, PA, examined Kathleen and noted normal mental status aside from a "not well" mood, and fair insight and judgment. R. 580.

**b.  Medical Opinions**

On August 5, 2019, state agency physician Andrew Bockner, M.D., reviewed Kathleen's records and determined that she had moderate limitations with understanding and remembering detailed instructions, carrying out detailed instructions, maintaining attention and concentration for extended periods, working in coordination with or in proximity to others without being distracted, completing a normal workday and work week and performing at a consistent pace, interacting appropriately with the general public, and responding appropriately to changes in the work setting. R. 149–51. Despite these limitations, Dr. Bockner found that Kathleen is capable of understanding, remembering and carrying out one and two-step instructions; working during an

8-hour workday with occasional, regular breaks; working in a setting with limited contact with the general public; and working in a job requiring little independent decision making. Id.  Dr. Bockner noted that Kathleen continues to receive counseling and psychiatry services and has shown some improvement. He noted that Kathleen is able to complete housework such as laundry, cleaning, cooking and mowing, and has pursued hobbies like house painting, gardening and making dream catchers. He recognized that Kathleen consistently had a sad or anxious mood and affect and reported some memory problems. R. 152. Dr. Bockner concluded that Kathleen could perform simple, repetitive work tasks in a low stress setting with limited contact with others. Id.

On March 31, 2020, state agency physician Joseph Leizer, Ph.D., reviewed Kathleen's records and agreed with Dr. Bockner's findings and suggested RFC. R. 166–69.

### c.  Administrative Hearing and ALJ Decision

At the administrative hearing, Kathleen testified that she rarely drives a vehicle, she has panic attacks around groups of 10 or more, and her concentration level is not where it used to be. R. 118–23.  Kathleen testified that she makes dream catchers on occasion. R. 123. She reported that her memory is getting worse, her anxiety is high, and she has panic attacks 4 to 5 days a week. R. 123–26.  Regarding her stomach issues, Kathleen testified that her anxiety upsets her stomach and she's lost over 40 pounds since her son died. R. 128.  Kathleen testified that she takes care of her three cats, "swiffers" the floors, and cleans the house. R. 128.

The ALJ reviewed Kathleen's testimony regarding her mental health impairments, treatment and limitations. R. 83–85. The ALJ found that Kathleen's impairments could be expected to cause her alleged symptoms, but that her statements concerning the intensity, persistence and limiting effects of the symptoms are not entirely consistent with the medical

8

evidence and other evidence in the record. R. 85.  The ALJ reviewed Kathleen's mental health treatment in detail and noted that Kathleen's symptoms were managed in a relatively conservative manner with outpatient medications and counseling. R. 86. The ALJ noted that Kathleen did not require inpatient hospitalization or acute interventions, even with reported increased symptoms in early 2021.  The ALJ also noted that Kathleen's reports to her providers indicated mild to moderate depression in screenings, her depression and anxiety were often described as stable with medication, and her medications were frequently renewed without adjustment. Id.  The ALJ reviewed Kathleen's reports of activities to her providers in the records, including remodeling her home, painting walls, seeing her sister often, reading mysteries, making dream catchers and looking forward to an upcoming trip. Id. The ALJ noted Kathleen's reports of being stable, benefiting from her medications, and being independent in performing activities of daily living.  Overall, the ALJ found that Kathleen's asserted level of symptom severity and functional loss is only partially consistent with other evidence.

The ALJ found that objective medical evidence supported the conclusion that Kathleen could perform the limited range of mental work activities set out in the RFC. R. 87. The ALJ reviewed Kathleen's mental status examinations which consistently showed tearful affect, but intact orientation and memory, no thought disorder, linear stream of thought, clear and fluent speech, and good eye contact. R. 87.

Regarding Kathleen's gastrointestinal problems, the ALJ noted that Kathleen complained of diarrhea, decreased appetite, stomach pain and weight loss on and off since her son died. Id. She was diagnosed with GERD and chronic diarrhea, and prescribed ranitidine, Bentyl, a BRAT diet and drinking lots of fluids. The ALJ found Kathleen's allegations of disabling weakness, fatigue and excessive bathroom breaks inconsistent with the generally conservative management

of her symptoms and her normal clinical presentation.  The ALJ noted records reflecting that Kathleen described her appetite and sleep as fair, her body mass index fell within normal limits, and she decided to stop taking ranitidine. The ALJ accommodated Kathleen's chronic gastrointestinal symptoms by restricting her to a range of light work, with some off-task behavior and absences. R. 88.

The ALJ reviewed the opinions of Drs. Bockner and Leizer, and found them "supported in that they aptly considered evidence about the claimant's relatively broad activities of daily living and stable observed mental status over time." R. 88–89. The ALJ found the physicians' assessments only partially consistent with other evidence, and imposed additional limitations to fully address Kathleen's reports of fatigue and variable appetite.  Specifically, the ALJ included additional restrictions of jobs that involve no tandem tasks, no fast-paced production requirements, and no working around dangers or hazards. R. 89.  The ALJ also imposed more restrictive social interaction limitations based on Kathleen's reports of difficulty being around others. The ALJ determined that Kathleen's cumulative effect of combined impairments would require accommodations of up to 10 percent off task performance apart from regularly scheduled breaks, and absence from work up to one day per month. Id. Given all of the evidence, the ALJ determined that Kathleen can perform the limited basic work activities described in the RFC.

## II.  **Mental RFC**

Kathleen asserts that the ALJ's analysis of her mental impairments does not comply with SSR 98-8p. Specifically, Kathleen argues that the ALJ failed to address her ability to sustain work over an eight-hour workday, and failed to explain how he accommodated her moderate impairments with concentration, persistence or pace and interacting with others.  Kathleen also

argues that the ALJ did not explain what he meant by "fast paced production requirements" in
his hypothetical question to the vocational expert.

SSR 96-8P requires the ALJ to include a narrative discussion describing how the
evidence supports his conclusions when developing the RFC. Mascio v. Colvin, 780 F.3d. 632,
636 (4th Cir. 2015).  The ALJ "must include a narrative discussion describing how the evidence
supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical
evidence (e.g., daily activities, observations)." SSR 96-8P, 1996 WL 374184, at *7 (S.S.A. July
2, 1996) [5]; Monroe v. Colvin, 826 F.3d 176, 189, (4th Cir. 2016) (emphasizing that the ALJ must
"build an accurate and logical bridge from the evidence to his conclusion" and holding that
remand was appropriate when the ALJ failed to make "specific findings" about whether the
claimant's limitations would cause him to experience his claimed symptoms during work and if
so, how often).

A function-by-function analysis requires the ALJ to develop an adequate RFC that
accounts for the work activities the claimant can perform given the physical or mental
impairments affecting her ability to work. Importantly, the ALJ must explain the conclusions
reached and explain any record evidence which contradicts the RFC determination. See SSR 96-
8P, 1996 WL 374184, at *7. The ALJ is instructed to cite specific medical facts and non-medical
evidence supporting his conclusion, discuss the individual's ability to perform sustained work
activities in an ordinary work setting on a regular and continuing basis, describe the maximum

---

[5] Social Security Rulings are "final opinions and orders and statements of policy and interpretations" that
the Social Security Administration has adopted. 20 C.F.R. § 402.35(b)(1).  Once published, these rulings are binding
on all components of the Social Security Administration. Heckler v. Edwards, 465 U.S. 870, 873 n.3 (1984); 20
C.F.R. § 402.35(b)(1). "While they do not have the force of law, they are entitled to deference unless they are
clearly erroneous or inconsistent with the law." Pass v. Chater, 65 F.3d 1200, 1204 n.3 (4th Cir. 1995).

amount of each work-related activity the individual can perform, and explain how any material inconsistencies or ambiguities in the evidence were considered and resolved. Id.

In Mascio v. Colvin, the court rejected a "per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis," agreeing instead with the Second Circuit that "'[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review.'" Mascio, 780 F.3d at 636 (citing Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013)). "The Mascio Court held remand was necessary, in part, because the ALJ failed to indicate the weight given to two residual functional capacity assessments which contained relevant conflicting evidence regarding the claimant's weightlifting abilities." Newcomb v. Colvin, No. 2:14–CV–76, 2015 WL 1954541, at *3 (N.D. W. Va. Apr. 29, 2015).

The ALJ determined that Kathleen had a moderate impairment of interacting with others, noting her allegations of avoiding spending time with others outside of her close family and friends, and that going out in public exacerbates her anxiety. The ALJ found objective evidence of functional loss in this area as Kathleen presented with abnormal mood and affect at many treatment visits. R. 80. However, the ALJ also noted that most of Kathleen's treatment notes describe appropriate interactions, being alert and cooperative, with good eye contact. The ALJ noted that Kathleen remained able to shop in stores, at least briefly, and kept in touch and interacted with various people who knew her son. R. 81. The ALJ reviewed Kathleen's mental health treatment notes, her allegations and her daily activities, and determined that Kathleen had a moderate limitation with interacting with others. R. 81–88.  The ALJ reviewed the opinions of Drs. Bockner and Leizer that Kathleen would work best in a setting with limited contact with the

general public and little independent decision-making, and found them partially persuasive.

R. 88. The ALJ imposed additional limitations to accommodate Kathleen's moderate social

interaction impairment; namely, no direct contact with crowds or public interaction, although she

is able to interact with coworkers and supervisors in brief, superficial encounters, predominantly

lasting one to three minutes each. R. 83.

 Regarding the domain of concentration, persistence, or maintaining pace, the ALJ

determined that Kathleen had a moderate impairment, noting her alleged problems with

concentrating and completing tasks, and complaints of poor sleep and appetite. R. 81. The ALJ

found that most treatment notes described Kathleen as alert and oriented, without any obvious

distractibility, lethargy, slow thinking, speech or movements. R. 81. The ALJ noted Kathleen's

self-reported activities of taking care of pets, preparing simple meals, doing routine cleaning

tasks, crafting, yardwork, and various home improvement projects, which demonstrate at least

some capability with concentration, persistence and maintaining pace. The ALJ noted that

Kathleen reported reading, completing word puzzles and making dream catchers as recently as

February 2021.  The ALJ found that Kathleen had a moderate impairment with concentration,

persistence and pace, and found partially persuasive the opinions of Drs. Bockner and Leizer that

Kathleen could perform work with one to two-step instructions with occasional, regular breaks.

R. 88. The ALJ determined that Kathleen's moderate impairment in this domain required

additional accommodations of restriction to simple, routine, non-complex tasks, in a work

environment presenting routine work situations and routine work changes, which involves no

tandem tasks, and has no fast-paced production requirements.  The ALJ also found that Kathleen

may incur up to 10 percent off task performance apart from regular employer-scheduled breaks.

R. 83.  The ALJ explained that the elimination of jobs requiring tandem tasks or fast-paced

production addresses Kathleen's foreseeable loss of pace due to her psychiatrically based symptoms. The ALJ also noted that her expected rate of off-task behavior assumes that she would have some loss of productivity from her concentration and persistence deficits. The ALJ determined that a limitation concerning hazards addresses Kathleen's reports of poor sleep and reduced concentration. R. 81.

Kathleen asserts that the ALJ's analysis mischaracterizes the evidence in the record and minimizes the evidence documenting her severe anxiety and difficulty interacting with others. Pl. Br. Summ. J. p. 25. Having reviewed the medical evidence and the ALJ's opinion, I find that the ALJ sufficiently summarized the evidence and provided appropriate weight to Kathleen's assertions regarding her anxiety and social interaction limitations.  The ALJ acknowledged that Kathleen suffered from a moderate impairment with social interaction, and accounted for Kathleen's documented anxiety and difficulty with social interaction by providing detailed accommodations in the RFC beyond those suggested by the state agency physicians.

 Kathleen also asserts broad, non-specific claims that the ALJ's decision fails to properly account for her moderate impairments with concentration, persistence or pace, and fails to include the necessary explanation and "logical bridge" between the evidence and ALJ's decision. I disagree. Contrary to Kathleen's assertion, the ALJ explained his reasoning and the RFC in detail, including specific references to the medical records and opinions. The ALJ considered Kathleen's mental health complaints, her mental health treatment records, her generally normal mental status exams, her activities, and the state agency opinions in the record. The ALJ agreed with Drs. Bockner and Leizer that Kathleen had moderate impairments with the domains of concentration, persistence and pace and social interaction; however, the ALJ imposed additional limitations beyond those suggested by the physicians to fully accommodate Kathleen's

impairments.  The ALJ provided detailed accommodations for Kathleen's impairments with

concentration, persistence or pace and social interaction in the RFC, and explained how the

accommodations related to her limitations. Notably, the ALJ's RFC is more restrictive than any

opinions provided in the record.  Thus, the ALJ provided the required explanation and the logical

bridge for this court to review his decision.

      This is not a situation like <u>Mascio</u>, where the ALJ summarily concluded that a limitation

to simple, unskilled work accounts for the claimant's moderate impairment in concentration,

persistence and pace without further analysis. Here, the ALJ provided a fulsome analysis

addressing the objective record, Kathleen's subjective allegations, the physician opinions, and

explaining the restrictions included in the RFC. Thus, the ALJ's analysis of Kathleen's mental

health impairments is supported by substantial evidence.

      Kathleen also asserts that the ALJ failed to address her ability to sustain work over an

eight-hour workday, and that the RFC addresses only skill level and not an ability to stay on task.

Pl. Br. Summ. J. p. 26. The ALJ considered Kathleen's difficulty with persistence and

maintaining pace, and determined that she has a moderate limitation in this area, which is

accommodated by a restriction to simple, routine, non-complex tasks, with an expected rate of

off-task behavior beyond employer-provided breaks. The ALJ stated, "[t]he expected rate of off-

task behavior assumes that the claimant would have some loss of productivity from her

concentration and persistence deficits.  The elimination of jobs requiring tandem tasks or fast-

paced production further addresses the claimant's foreseeable loss of pace due to the

psychiatrically based symptoms." R. 81.  The ALJ also gave weight to the opinions of Drs.

Bockner and Leizer that Kathleen could perform sustained work activities.  Thus, the ALJ

considered and explained his conclusion that Kathleen could sustain a limited range of light work

for an eight-hour day, and that Kathleen would be off task 10 percent of an eight-hour workday. The ALJ's RFC is, by definition, a determination of what Kathleen can perform on a "regular and continuing basis," meaning "8 hours a day, for 5 days a week, or an equivalent work schedule." See 20 C.F.R. §§ 404.1545(b); SSR 96-8, 1996 WL 374184, at *1-2.

Thus, the ALJ provided a narrative discussion explaining his conclusions and the evidence that contradicts the RFC determination, cited specific medical facts and non-medical evidence supporting his conclusion, discussed Kathleen's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis, and described the maximum amount of each work-related activity that Kathleen can perform. An ALJ's narrative discussion of all the evidence in support of his findings in determining a claimant's RFC is sufficient to comply with the function-by-function analysis under SSR 96-8P.

Kathleen also argues that the ALJ failed to explain what he meant by "fast-paced production requirements" in his hypothetical questions to the vocational expert and in his RFC findings, relying upon Thomas v. Berryhill, 916 F. 3d 307 (4th Cir. 2019). Pl. Br. Summ. J. pp. 21–22. In Thomas v. Berryhill and Perry v. Berryhill, the Fourth Circuit remanded cases in which the ALJ used phrases in the RFC similar to work not at a "production-rate pace," without providing further explanation or definition of that phrase. Thomas, 916 F.3d. at 312; Perry v. Berryhill, 765 Fed. Appx. 869, 872 (4th Cir. Aug. 29, 2019). The terms "production-rate" or "pace requirements" in an RFC alone do not warrant remand of an ALJ's decision. Rather, the issue is whether the ALJ provides sufficient information as to how the RFC accommodates the claimant's limitations, and whether the ALJ provides information for the court to determine what the restrictions in the RFC mean. See Nelson v. Saul, No. 4:18cv163-D, 2019 WL 4748028, at *5 (E.D.N.C. Aug. 29, 2019) (collecting cases).

Unlike the ALJ's cursory analysis of the plaintiff's mental limitations in <u>Thomas</u>, the ALJ here provided ample discussion of how Kathleen's mental impairments impact her ability to perform work-related tasks. The ALJ discussed Kathleen's moderate limitation with maintaining pace and noted that the elimination of jobs requiring tandem tasks or fast-paced production addresses her foreseeable loss of pace due her to psychiatrically based symptoms. R. 81. The ALJ also explained that these limitations address Kathleen's reports of fatigue, variable sleep and variable appetite. R. 89. Thus, considering the ALJ's fulsome explanation and analysis, the ALJ's limitation of Kathleen to simple, routine, non-complex tasks in a work environment presenting routine work situations and routine work changes, which involves no tandem tasks, and has no fast-paced production requirements is appropriate. <u>See</u> <u>Richardson v. Berryhill</u>, 2019 WL 1354042, at *3 (W.D.N.C. March 26, 2019) ("[I]n light of the ALJ's full decision and analysis, the ALJ's RFC limitation to a nonproduction pace passes muster under <u>Thomas</u> because the ALJ contextualized and explained how he reached his conclusion regarding Plaintiff's RFC.")

### III.    Subjective Allegations

Kathleen argues that the ALJ's assessment of her allegations is not supported by substantial evidence. Pl. Br. Summ. J. p. 27–32.  Kathleen takes issue with the ALJ's reliance upon her ability to perform a variety of daily activities without qualifying the extent to which she can perform those activities, and argues that the ALJ mischaracterized and minimized the evidence.

Under the regulations implementing the Social Security Act, an ALJ follows a two-step analysis when considering a claimant's subjective statements about impairments and symptoms. SSR 16-3P, 2017 WL 5180304 (S.S.A. Oct. 25, 2017); 20 C.F.R. §§ 404.1529(b)–

(c), 416.929(b)–(c). First, the ALJ looks for objective medical evidence showing a condition that could reasonably produce the alleged symptoms, such as pain. Id. at *3, §§ 404.1529(b), 416.929(b). Second, the ALJ must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's ability to work. Id. §§ 404.1529(c), 416.929(c). In making that determination, the ALJ must "examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." Id. (emphasis added). "At this step, objective evidence is *not* required to find the claimant disabled." Arakas v. Comm'r, 983 F.3d 83, 95 (4th Cir. 2020) (citing SSR 16-3p, 2016 WL 1119029, at *4–5). SSR 16-3p recognizes that "[s]ymptoms cannot always be measured objectively through clinical or laboratory diagnostic techniques." Id. at *4. Thus, the ALJ must consider the entire case record and may "not disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate" them. Id. at *5.

Substantial evidence supports the ALJ's determinations regarding Kathleen's allegations. The ALJ reviewed Kathleen's testimony in detail, along with the evidence of record. The ALJ found that Kathleen's statements concerning the limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record. R. 85. The ALJ supported this conclusion with a narrative discussion of Kathleen's lengthy mental health treatment history; her largely normal mental status examinations, aside from sad and tearful affect; her stability with medication management; and the reviewing opinions in the record. R. 85–89.

18

Kathleen specifically asserts that the ALJ failed to qualify the extent to which she performed daily activities, and failed to acknowledge evidence that she took her time performing household chores, only prepared simple meals, avoided going out in public, and had difficulty concentrating when making dreamcatchers. Pl. Br. Summ. J. p. 29.  Kathleen points to Arakas v. Comm'r, and Brown v. Commissioner, 873 F.3d 251 (4th Cir. 2017) for the proposition that an ALJ may not consider the type of activities a claimant can perform without also considering the extent to which she can perform them. Id.

This is not a situation like Brown v. Comm'r, 873 F.3d 251 (4th Cir. 2017), where the ALJ overly relied upon minimal daily activities in evaluating the claimant's subjective complaints. Here, the ALJ noted Kathleen's reports of staying busy, painting walls, seeing her sister, reading mysteries, making dream catchers and other crafting activities, attending graduation ceremonies of her son's friends, and performing yardwork, when reviewing the mental health records and Kathleen's subjective reports. R. 86. The ALJ noted that Kathleen reported being able to shop in stores, at least briefly, despite her discomfort around others. R. 81. The ALJ also noted that Kathleen's activities of taking care of pets, preparing meals, cleaning and crafting demonstrated, "at least come capability" in the domain of concentration, persistence or maintaining pace. R. 81.

The regulations specifically provide that an ALJ may consider a claimant's daily activities, among other factors, in determining the extent to which a claimant's symptoms limit his capacity for work. See 20 C.F.R. § 404.1529(c). Here, the ALJ appropriately considered Kathleen's reported daily activities. The ALJ did not ignore evidence limiting these activities or use them as a basis for his conclusion that Kathleen can perform work.  Rather, the ALJ considered these activities together with the mental health treatment evidence and physician

opinions, as a means of evaluating the intensity, persistence and limiting effects of Kathleen's

symptoms.  See Arakas, 983 F.3d at 99 ("In evaluating the intensity, persistence, and limiting

effects of a claimant's symptoms, ALJs may consider the claimant's daily activities.") (citing 20

C.F.R § 404.1529(c)(3)(i)). Thus, the ALJ appropriately considered Kathleen's activities as one

factor in determining the extent to which symptoms affected her capacity to work. See

e.g. Wooten v. Berryhill, No. 1:17-CV-190-DCK, 2018 WL 3014412, at *5 (W.D.N.C. June 15,

2018) (noting that, "[i]nstead of simply equating an ability to perform daily activities with an

ability to [work], the ALJ used evidence of Plaintiff's daily activities as just one factor in his

ultimate RFC determination"); Heyward v. Berryhill, No. 8:16-CV-03003-JMC, 2018 WL

1417526, at *5 (D.S.C. Mar. 21, 2018) (finding that the ALJ did not err in considering plaintiff's

activities of daily living, as 20 C.F.R. § 404.1529(c)(3)(i) provides that "claimant's daily

activities is one factor the ALJ will consider when evaluating a claimant's symptoms, including

pain.")

        A reviewing court gives great weight to the ALJ's assessment of a claimant's subjective

statements and should not interfere with that assessment where the evidence in the record

supports the ALJ's conclusions. See Shively v. Heckler, 739 F.2d 987, 989–90 (4th Cir. 1984).

Further, a reviewing court will defer to the ALJ's credibility finding except in those

"exceptional" cases where the determination is unclear, unreasonable, contradicts other findings

of fact, or is based on an inadequate reason or no reason at all.  See Bishop v. Comm'r of Soc.

Sec., 583 Fed. Appx. 65, 68 (D. Md. May 4, 2016) (citing Edeco, Inc. v. NLRB, 132 F.3d 1007,

1011 (4th Cir. 1997)). The ALJ's opinion was thorough and applied the proper legal standard,

and I will not re-weigh the evidence. Accordingly, I conclude that the ALJ supported his analysis

of Kathleen's subjective complaints with substantial evidence.

### IV.    Additional Evidence

Kathleen submitted additional records to the Appeals Council, dated March 22, 2021 through August 16, 2021. R. 8–12, 18–73. The Appeals Council determined that the additional records dated prior to the ALJ's April 30, 2021 decision did not show a reasonable probability that they would change the outcome of the decision; and that the records dated after the ALJ's decision did not relate to the period at issue. R. 2.

The Appeals Council will only consider additional evidence that is not submitted to an ALJ within the provided time period if there is good cause for not previously submitting the evidence. 20 C.F.R. § 404.970(b).  The good cause exceptions found within 20 C.F.R. § 404.970(b) include three categories: (1) a misleading act by the Social Security Administration ("SSA"); (2) physical, mental, educational, or linguistic limitation(s) that prevented the individual from informing SSA about or submitting the evidence earlier; and (3) some other unusual, unexpected, or unavoidable circumstance beyond the individual's control prevented them from informing SSA about or submitting the evidence earlier, such as a serious illness, a death in the immediate family, important records were destroyed or damaged, or the individual diligently sought evidence from a source and the evidence was not received prior to the hearing. 20 C.F.R. §§ 434.935(b), 404.970(b).

Once the claimant shows good cause, the Appeals Council will review an ALJ's decision if it receives additional evidence that is "new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. § 404.970(a)(5) (effective Jan. 17, 2017). Evidence is new if it is not duplicative or cumulative and evidence is material if there is a reasonable probability the additional evidence would change the outcome of the decision. 20

C.F.R. § 404.970(a)(5). However, the Appeals Council need not review or consider new evidence that relates only to a period after the ALJ issues the decision. See 20 C.F.R. § 404.970. Additionally, the Appeals Council need not explain its reason for denying review of an ALJ's decision. Meyer v. Astrue, 662 F. 3d 700, 702, 706 (4th Cir. 2011). When the Appeals Council denies review, this denial makes the ALJ's decision final, at which point, it is the decision of the ALJ, and not the procedural decision of the Appeals Council to deny review, that is subject to judicial scrutiny. See 20 C.F.R. §§ 404.967–981; Bowles v. Barnhart, 392 F. Supp. 2d 738, 742–43 (W.D. Va. 2005).

Kathleen does not provide reasoning to the Appeals Council or in her briefing to the Court to support a finding of good cause for her failure to provide the additional records dated prior to the ALJ's decision. "[U]nder the new regulations, the Appeals Council is not authorized to even consider additional evidence absent a showing of good cause for why it was not submitted to the ALJ prior to the hearing." Montoya v. Kijakazi, No. 1:20cv1157, 2022 WL 568945, at *9 (M.D.N.C. Jan. 11, 2022).

Kathleen also submitted records dated after the ALJ's April 30, 2021 opinion, reflecting a diagnosis of invasive ductal carcinoma in Kathleen's right breast on August 11, 2021. R. 18–44. Kathleen does not argue and there is no indication in the record that this condition relates back to the relevant period.

Otherwise, the additional records dated after the ALJ's decision relate to continued treatment of Kathleen's mental health conditions of anxiety and depression with the same providers she saw during the relevant period, and continued treatment with medication. R. 46–73. These records are cumulative as they reflect the same diagnoses and treatment that Kathleen

received during the relevant period, and there is no reasonable probability they would change the outcome of the ALJ's decision.

Kathleen also submitted a medical source statement from her counselor, Alison Allsbrook, dated July 23, 2021. R. 8–10. Kathleen asserts the opinion is "new and material evidence," and that good cause exists for her failure to submit the opinion to the ALJ because it was created after the ALJ's decision.

However, a physician writing an opinion after the ALJ's decision does not, standing alone, meet the standard for good cause in the regulations. 20 C.F.R. § 404.970(b). See, e.g., Smith v. Berryhill, No.1:18-337-CMC-SVH, 2019 WL 1549036, at *27 (D.S.C. March 6, 2019) ("Plaintiff's reliance on the fact that the statement was created after the ALJ's decision, without more, is not sufficient to overcome her responsibility to submit all evidence in support of her claim or inform the ALJ of outstanding evidence as required to allow the ALJ's timely decision based upon a complete record."). "Were the Court to conclude otherwise, the good cause requirement would be rendered a nullity." Montoya, 2022 WL 568945, at *10.  See Cate T. M. v. Saul, No. 3:20cv70, 2021 WL 3560229, at *12 (E.D. Va. July 22, 2021) (Plaintiff has not offered any explanation, let alone good cause, why the treating physician could not have evaluated Plaintiff and submitted her report prior to the ALJ's decision); Culbreath v. Colvin, No. 5:15cv63, 2016 WL 6780347, at *6 (W.D.N.C. Nov. 15, 2016) (finding that the treating physician questionnaire may be new in a technical sense of the word because the document was not in physical existence prior to the ALJ's decision, but nothing constrained the plaintiff from obtaining an affidavit from the doctor regarding his retrospective opinions about Plaintiff's symptoms prior to the hearing before the ALJ); Overcash v. Astrue, No. 5:07CV-123-RLV, 2011 WL 815789, at *5 (W.D.N.C. Feb. 28, 2011) ("To permit remand for evidence such as this

would open the door to remand in any case where the plaintiff returns to a treating doctor to get a letter stating that the doctor disagrees with the ALJ's decision. Such a result is inconsistent with the good cause requirement's purpose of preventing these cases from going on indefinitely and there is nothing to indicate that the doctor's opinion was based on any medical evidence unavailable during the administrative proceedings below.") (internal quotations omitted).

Here, Kathleen treated with Ms. Allsbrook for four years prior to the ALJ's decision and there is no explanation or good cause provided as to why Ms. Allsbrook could not provide the opinion prior to the hearing before the ALJ. Further, Ms. Allsbrook's opinion is not new, as it is not a result of ongoing treatment, a new evaluation, or provided as rebuttal evidence to new evidence that the ALJ introduced at or after the hearing. Rather, it is an attempt to clarify Ms. Allsbrook's treatment notes that were already provided in the record and assessed by the ALJ. Accordingly, the new evidence presented provides no reason for remand.

<u>**CONCLUSION**</u>

I **RECOMMEND** entering an order **AFFIRMING** the final decision of the Commissioner, **GRANTING** summary judgment to the defendant, **DENYING** plaintiff's motion for summary judgment, and **DISMISSING** this case from the court's docket.

The Clerk is directed to transmit the record in this case to Elizabeth K. Dillon, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitations or findings as well

as to the conclusion reached by me may be construed by any reviewing court as a waiver of such

objections, including the waiver of the right to appeal.

Entered: January 3, 2023

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge